Harold Lee PLESS, Sr., Petitioner,

v.

STATE OF NORTH CAROLINA, MECK-LENBURG COUNTY, Respondent.

No. C–C–78–208.

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 13, 1981.

---

Harry B. Crow, Jr., Monroe, N. C., for petitioner.

Richard N. League, Sp. Deputy Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

This case has reached a stage where extraordinary action is required in order to prevent an extraordinary and gross injustice. A brief review of the proceedings follows.

Harold Lee Pless, Sr. is a black-skinned "white collar" convict. He was charged with insurance fraud and was prosecuted twice in Mecklenburg County and once in Wake County, North Carolina. The results of those various prosecutions were as follows:

In Mecklenburg County on August 25, 1978, Pless was convicted by a jury in cases numbers 78–CR–6864, 6865 and 6867. Numbers 6864 and 6865 were consolidated for judgment and a sentence of two to three years was imposed. In case number 6867 a sentence of four to seven years was imposed, to run consecutive to the consolidated sentences in the other two cases. These three cases, the August 1978 Mecklenburg convictions, are the cases out of which the current habeas corpus petition arose.

In Mecklenburg County a few weeks later, in September, 1978, petitioner pleaded guilty to two charges of insurance fraud and one charge of conspiracy, and received two additional sentences of four to six years' imprisonment. Those are Mecklenburg cases 78–CR–6861, 6862 and 6866. The presiding judge imposed a sentence of two to three years in two of the cases and a consecutive sentence of two to three years in the third case, all to be consecutive to the August, 1978, Mecklenburg sentences.

Later, on November 15, 1978, in Wake County, petitioner pleaded guilty to three other charges, and in those Wake County charges received consolidated sentences of two to four years' imprisonment *concurrent* with the previous Mecklenburg sentences.

In November, 1980, Pless was serving his sentences in minimum security in a Mecklenburg County prison camp. He was on or eligible for work release, and was approaching parole eligibility.

All of Pless' original habeas corpus claims have been dismissed except his contention that he was denied the right to effective assistance of counsel by the failure of his counsel to exercise proper efforts to prosecute his appeal. The claim of ineffective assistance of counsel was considered by this court; an evidentiary hearing was conducted on November 17, 1980; and a decision was reached in a final order entered on December 3, 1980, 502 F.Supp. 438, granting the writ of habeas corpus because of ineffective assistance of counsel. The last portion of that order, verbatim, is as follows:

"Petitioner received sentences totaling six to ten years based upon his trial and conviction in Mecklenburg County. He received additional sentences totaling four to six years as a result of his pleas of guilty as to the remaining counts. In separate cases in Wake County, petitioner received consecutive sentences of two to three years and two to four years, respectively, to run concurrently with his sentences in the Mecklenburg County cases. *It is possible that petitioner may be eligible for parole from the Wake County*

*sentences after this writ of habeas corpus is granted*; the court expresses no opinion on that question. This paragraph has been included in this order, however, to explain why, though the writ of habeas corpus is being issued, the actual release of the prisoner depends upon the resolution of the factors referred to in this paragraph.

"*Respondents are directed to advise the court and petitioner, by December 22, 1980, as to petitioner's then status with respect to liberty or time remaining to be served.*

"IT IS THEREFORE ORDERED:

"1. That petitioner's application for a writ of habeas corpus is granted with respect to his claim of ineffective assistance of counsel. Counsel will confer and tender an appropriate judgment by December 15, 1980.

"2. That petitioner's remaining claims are dismissed."

[Emphasis added.]

Neither the Attorney General nor the petitioner complied with the order. Instead, late, each lawyer sent in a separate version of a proposed judgment.

*The Attorney General submitted no information whatever by December 22, 1980,* as to petitioner's then status with respect to liberty or time remaining to be served.

Therefore, on December 23, 1980, this court entered an order directing immediate release of the petitioner and reciting in part the following:

"No agreed judgment has been tendered to carry out that writ. Instead, late, each lawyer sent in a different proposed judgment.

"The Attorney General has not, as directed, advised the court as to petitioner's status with respect to liberty or time remaining to be served.

"The Attorney General, without commenting on it in his letter, has included in his proposed judgment some provisions which would keep the petitioner in jail for as much as sixty days from some unspecified date while the State decides whether to allow the appellate review

which up to now it has not afforded petitioner.

"Because the Attorney General has not supplied the information directed, the court does not know whether the state's suggested judgment would result in unjustly prolonging petitioner's imprisonment. The burden of that risk should not be petitioner's.

"IT IS THEREFORE ORDERED that the writ of habeas corpus is hereby issued, and that petitioner be released immediately from custody pending further order of this court, upon the posting by petitioner of a bond of adequate surety in the amount of $5,000.00, conditioned upon his faithful attendance at any later proceedings instituted within sixty days in the State courts upon the charges in the three cases covered by the December 3, 1980 order.

"If after petitioner has been thus released the State demonstrates that petitioner has time remaining to serve on other sentences, and moves for his re-incarceration within a reasonable time, appropriate attention will be given to such motion.

"If the State elects to re-try petitioner, that re-trial must take place within a reasonable time."

On December 30, 1980, Richard N. League, the Special Deputy Attorney General representing defendants, moved for reconsideration. The only evidence in support of the motion was a December 29, 1980, affidavit by Hazel W. Keith, Director of Combined Records for the North Carolina Department of Correction. That affidavit lists "release dates" on the three groups of sentences. It shows that the "release date" for the August, 1978, Mecklenburg sentences was April 12, 1980; for the Wake County sentences it was March 13, 1981, and for the September, 1978, Mecklenburg sentences it was March 13, 1982.

*However, there is no mention of parole eligibility date, or of anything being done with reference to parole.*

Some of the petitioner's Department of Correction record was forwarded on January 9, 1981. It does not mention parole except to state a "parole eligibility date, April 25, 1983," which is obviously an unrealistic date, and it sheds no light on the court's original inquiry.

On January 9, 1981, Mr. League filed a second motion for reconsideration, which appeared to imply that the writ of habeas corpus would in fact delay petitioner's consideration for parole.

The court on January 27, 1981, *assuming that the Parole Board would not penalize petitioner for seeking and getting partial relief in this court,* entered an order as follows:

"Further action on this case has been delayed by two weeks of court.

"The supplemental information provided by the Attorney General indicates that petitioner still has time to serve on his Wake County sentences. That being the case, he should be returned to custody until the Wake County sentences are satisfied, either by serving the time or by parole.

"Notwithstanding the suggestion in the Attorney General's "SUPPLEMENT TO RESPONDENTS' MOTION FOR RECONSIDERATION" filed January 9, 1981, that the prisoner may be penalized because the court ordered him to be at liberty until necessary information was forwarded by the Attorney General, the court assumes that the North Carolina Parole Board will accord petitioner the same eligibility for parole (except for his days at liberty under this court's order) that it would have accorded but for the entry of the order.

"As to the motion for clarification, that motion is, in effect, a request for an anticipatory decision on a matter not presented by the record. *If and when it appears of record that a state appellate court has in fact offered petitioner an opportunity to appeal, with competent counsel representing him, the court will be glad to give attention to that question.* [Emphasis added.]

"Since petitioner's sentence remaining to be served is unconnected with the sentence as to which the habeas corpus writ was issued,

"IT IS ORDERED that petitioner shall re-submit himself to the custody of the correctional institution at which he was most recently confined."

Mr. League, in another motion for reconsideration filed February 3, 1981, took umbrage at the court's concern about the intentions of the Attorney General, and again requested reconsideration of the court's order.

*Continuing to assume that Pless was not, in fact, being denied any right or consideration because he had obtained habeas corpus relief,* the court, on February 12, 1981, wrote Mr. League as follows:

"I think you are fighting a war which I, at least, have not declared, and was not aware was under way!

"The rulings I made had to do only with the Mecklenburg sentences which Pless complained of. The writ of December 23, 1980, was based upon Mecklenburg cases 78–CR–6864, 6865 and 6867. I did not have complete information *and do not have complete information now about other sentences and their status.* I have not at any time undertaken to set Pless free nor keep him free as to any sentences except those. [Emphasis added.]

"If you will tender an order which in your opinion clarifies your problems, I will be glad to consider it and will probably enter it if I can find the support for it in the record.

"Please draft an order which relieves your mind and straightens out the record."

In paragraph 2 of the February 3, 1981 motion mentioned above, the Attorney General also had requested a ruling as to whether the court had set aside the August, 1978, Mecklenburg convictions, so that he could advise the Parole Board upon what basis petitioner's parole eligibility should be computed.

The court has declined to exercise the option, which the state has under the orders of December 23, 1980, and January 28, 1981, either to re-try petitioner or to grant an appeal with effective assistance of counsel. However, the court sees no reason why the Attorney General and the Parole Commission cannot comply with the order of December 23, 1980, and compute petitioner's eligibility for parole upon the assumption that the August, 1978, Mecklenburg sentences are invalid.

The court has been waiting up until this week for information from the state as to when Pless would have been eligible for parole consideration if the August, 1978, Mecklenburg sentences were invalid.

There is no need to wait any longer.

On March 5, 1981, Mr. League wrote another letter which confirms that petitioner's successful prosecution of his application for a writ in this court *has* resulted in a delay of his consideration for parole. In that letter he says that the expected length of the appeal process is six to eight months. He then goes on to say:

"On the matter of parole, *I have not checked it.* However, petitioner is only currently readmitted to prison on sentences which will expire about two months from now and I know that the parole review process normally takes about three months. Therefore, I doubt he is being given any review for parole as he will be all together out without it as things now stand prior to the time he could be paroled. If Your Honor will readmit him on his remaining sentences, however, as you indicated you would, then the whole of his liability *will make review something other than a useless exercise* and it is probable that *some* parole review will occur. Let me hasten to add at this point, however, *I do not know* just what regulations will come *into play* or will affect review if you do this and *it may be that parole review would not be undertaken* in the normal course of things. What I mean to convey, however, is that the normal course of things will occur *once he is readmitted.** [* By

'readmitted,' I mean readmitted on his other Mecklenburg County sentences.] Additionally, let me point out that because petitioner is facing probable reincarceration on the charges you issued the writ on, *I would doubt his chances for parole are good even if he is reviewed and therefore there should be no reasonable expectation of parole on his part until his appeal is finally decided."* [Emphasis added.]

It is abundantly clear from the above that the information about parole which is a necessary part of anticipated "release date" is still being withheld.

It is also abundantly clear that Pless has no chance of being considered for parole while the possible appeal is under debate.

The court also has a letter from petitioner dated February 26, 1980, which is unsworn but which is consistent with the Attorney General's letter. In part, it says:

". . . [T]he state is prolonging my release and have kept me locked up in single cell for two weeks with no reason at all. I think I am being penalized for order that you issue on Dec 23, 1980. They took my gain time away from me and will not let me go on work release as I was supposed to have being schedule January 6, 1981."

All available evidence shows that petitioner is the victim of retaliation because this court saw fit to protect his right to counsel. If he stays in jail as the Attorney General desires, raw force rather than due process of law will prevail.

## CONCLUSION

On the information available:

Petitioner has not been afforded the effective assistance of counsel on his state court appeal of his criminal convictions.

Because he sought and obtained temporary liberty *via* habeas corpus in this court while the state was considering what relief if any to allow him, and what information to divulge in response to the orders of this court, his prison status has been degraded and his consideration for parole on all his

sentences has been postponed, thereby increasing his punishment. Such retaliation for asserting constitutional rights is intolerable.

He is in a "heads I win; tails, you lose," situation. Even if he ultimately wins his appeal, his punishment has been effectively extended, possibly to the full normal limit of his sentences, by the elimination of his cases from regular consideration for parole. Petitioner is the only player with any chips on the table.

If he *loses* all points at issue—certainly a rational possibility—the state is not prejudiced; he will have to serve out his sentence just as though no habeas corpus claim had been filed.

But if he *wins* all points at issue, it will be an empty victory, because he will have already served as much time as if he had never come to this court—and, apparently, far more.

Human rights should not be allowed to perish, avoidably, while courts and lawyers do their thing.

Release of petitioner temporarily on all his sentences, pending development of accurate, full information on his time to be served, including all credits and other pertinent information, including all parole information, appears to be the only way to prevent irreparable harm. The court again requests the respondents to produce that information.

IT IS THEREFORE ORDERED, pending further order of this court, that the writ of habeas corpus is granted, and that petitioner be released from custody on all his convictions, pending further orders of this court, upon the posting of a bond with adequate surety, with this court, in the amount of $5,000.00, conditioned upon his obeying all further orders of this court.

The Marshal will serve a copy of this order on the prison authorities where petitioner is confined, and the Clerk will send copies to the petitioner and his counsel, to the Department of Correction, and to the Attorney General.